UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DIVRIS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 20-40017-TSH |
| ANNIE DOOKHAN, DELLA SAUNDERS ) | |
| PETER PIRO, CHARLES SALEMI, ) | |
| LINDA HAN, JULIANNE NASSIF and ) | |
| ELIZABETH O'BRIEN ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OF DECISION AND ORDER
ON DEFENDANT PETER PIRO'S MOTION TO DISMISS**
March 11, 2022

**HILLMAN, D.J.**

Plaintiff Shawn Plaintiff ("Plaintiff") alleges that Peter Piro ("Piro" or "Defendant Piro") violated his rights under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, Mass. Gen. Laws c. 12, § 11H and I (MCRA) in both his individual and official capacity as a supervisor at a state-run laboratory. Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant moves to dismiss all claims against him.

Piro argues that Plaintiff's claims against him in his official capacity are barred because they are claims are in fact claims against the Commonwealth which is not subject to suit under either § 1983 or the MCRA, his claims against Piro in his personal capacity fail because he makes no allegations that Piro engaged in any actionable conduct, and his claims against Piro are barred by the doctrine of qualified immunity.

## Background

For purposes of this motion, the Court must accept these factual allegations as true and draw reasonable inferences therefrom in favor of Plaintiff. *See Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013). In his Amended Complaint, Plaintiff alleges the following facts. On May 22, 2007, Framingham police officers arrested Plaintiff and charged him with distribution of cocaine. Annie Dookhan, a chemist at the Massachusetts Department of Public Health's William A. Hinton State Laboratory, issued a certification falsely stating that she analyzed the substance and found it to be cocaine. In fact, Dookhan conducted no scientific testing on the substance. On or about June 22, 2009, Plaintiff pleaded guilty to possession with intent to distribute cocaine and was sentenced to three to five years of incarceration in state prison. Plaintiff served a total of 1,420 days of incarceration and 237 days of parole.

In 2017, the Massachusetts Supreme Judicial Court informed Plaintiff that his conviction was dismissed with prejudice in light of the discovery that Dookhan had "engaged in serious misconduct involving her work at a state drug lab." At that time, Dookhan was engaged in large-scale criminal and fraudulent conduct, including falsifying results, dry labbing, perjury, and forgery. A grand jury indicted Dookhan on seventeen counts of tampering with evidence, eight counts of obstruction of justice, one count of perjury, and one count of falsely claiming to hold a graduate degree; Dookhan pleaded guilty to all charges.

In addition to Dookhan's serious misconduct, Plaintiff alleges that other Department of Public Health (DPH) officials and personnel failed to properly supervise Dookhan and failed to implement adequate safeguards in the operation of the Hinton lab. The specific allegations in Plaintiff's Amended Complaint against these defendants include the following. Defendants Linda Han, the Director of the Hinton Lab, Julie Nassif, who oversaw the Division of Analytical

Chemistry at the Hinton Lab, Charles Salemi, the supervisor of operations at the Hinton Lab, and Elizabeth O'Brien, a supervisory evidence officer at the Hinton Lab, "created, maintained or implemented the policies, customs and practices of the Hinton Lab." *See* Amended Complaint ("AC") at ¶¶ 27, 28, 21,32. Han, Nassif, Salemi and O'Brien "created, maintained and/or implemented the policy, custom and practice of failing to conduct oversight, investigate complaints, report violations, enforce safeguards or policies, and ensure the integrity of the samples while stored at the Hinton Laboratory Evidence Room." *See id*. at ¶¶34. Plaintiff further alleges that Han and Nassif "failed to monitor Dookhan adequately, failed to alert their superiors to problems, and allowed her to continue to have access to substances, to test substances, and to testify in court even after the breach in June 2011." *Id*. at ¶30, and that Han and Nassif discovered that Dookhan had breached protocol by removing 90 samples from the evidence room without authorization, but "did not properly investigate the specific breach of protocol, her workload, her results, and/or her general lack of adherence to protocol." *Id.* at ¶33(r), (s). Finally, Plaintiff alleges that Salemi received reports of concerns regarding Dookhan's conduct at the lab, but he "only conducted an audit of paperwork for every tenth sample and no actual retesting was performed." *See* AC at ¶16(c).

Plaintiff's allegations that reference Defendant Piro include a reference to him as "a laboratory supervisor." *Id.* at ¶6, and as the employee who "reported numerous concerns regarding Dookhan's conduct at the lab to his superior, Salemi." but that Salemi did not adequately investigate these concerns. *Id.* at ¶16(c)

## Standard of Review

A defendant may move to dismiss, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a

Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.) (quoting *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008)).

### Discussion

Section 1983 "creates a remedy for violations of federal rights committed by persons acting under color of state law." *Haywood v. Drown*, 556 U.S. 729 (20009). It requires three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action. 42 U.S.C. § 1983.

4

*Official Capacity*

"[A] suit against a state official in his or her official capacity in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its official acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71.

Insofar as the Plaintiff's claims against Defendant Piro can be interpreted as being asserted against the Commonwealth of Massachusetts, such claims are barred by the Eleventh Amendment. "The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Further, "[t]he Commonwealth has expressly exercised its prerogative to waive its sovereign immunity only insofar as claims are brought against it in its own judicial fora." *Rivera v. Commonwealth*, 16 F. Supp. 2d 84, 87 (D. Mass. 1998). The Commonwealth has only waived its sovereign immunity under the Massachusetts Tort Claims Act, which grants sole jurisdiction to the state Superior Court. Mass. Gen. Laws. C. 258, §§ 2, 3. However, "[t]he Commonwealth has not consented to be sued in federal courts." *Nobile v. Commonwealth of Massachusetts, et al.*, 675 F. Supp. 2d 214, 216 (D. Mass. 2009). Consequently, because Plaintiff's Section 1983 claims against Defendant Piro in his official capacity are claims against the Commonwealth of Massachusetts, his claims are barred by the Eleventh Amendment.

*Individual Capacity*

Although "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*," *Iqbal*, 556 U.S. at 676, "supervisory officials may be liable on the basis of their own acts or omissions." *Sanchez v. Pereira-Castillo*,

590 F.3d 31, 49 (1st Cir. 2009).  Supervisory liability in the context of Section 1983 claims usually arises in one of two ways: "either the supervisor may be a 'primary violator or direct participant in the rights-violating incident,' or liability may attach 'if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation.'" *Id.* (quoting *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999)). "In either case, the plaintiff in a Section 1983 action must show 'an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization,' between the actor and the underlying violation." *Sanchez*, 590 F.3d at 49 (quoting *Camilo-Robles*, 175 F.3d at 44).

Because Plaintiff does not allege that Defendant Piro was a direct participant in Plaintiff's alleged harms, the later scenario is relevant here.  Thus, the inquiry focuses on "whether the supervisor's actions displayed deliberate indifference toward the rights of third parties and had some causal connection to the subsequent tort." *Camilo-Robles*, 175 F.3d at 44. Importantly, on a motion to dismiss, merely "[p]arroting our standard for supervisory liability in the context of Section 1983 . . . is precisely the type of 'the-defendant-unlawfully-harmed-me' allegation that the Supreme Court has determined should not be given credence when standing alone." *Sanchez*, 590 F.3d at 49 (internal citations omitted).

Here, Plaintiff has provided no factual allegations that could plausibly establish that Defendant Piro was deliberately indifferent to the fact that Dookhan would provide false analysis reports as to Plaintiff's criminal case presented a risk that federal rights would be violated. Further, Plaintiff does not plead any facts that could lead to an inference that Defendant Piro was

causally connected to his harms in any way.  Instead, Plaintiff has merely "parroted" the standard for supervisory liability. Therefore, Defendant Piro is also not liable in his individual capacity.

Because Defendant Piro is not officially or individually liable for the claims against him, the issue of qualified immunity need not be addressed.

## Conclusion

For the reasons set forth above, Defendant Piro's Motion to Dismiss (Docket No. 21) is ***granted***.

**SO ORDERED.**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**